Your Honors, I'm Richard Trudis. May it please the Court. And I'm the attorney for the appellant, Maria Gherman. I'm sorry that I have to be here before you today, because this case should never have gotten this far. And basically, it's exemplary of increasing levels of bureaucratic incompetence. The record shows that the I.J. decided without any reason on the record that Ms. Gherman was to be denied both withholdal from removing and asylum. If you look at the I.J.'s decision, you find that he was very careful to touch upon each of the four grounds which could be a basis for denial, and did so in essentially one sentence each, in his opinion. None of these are supported by the record, and this is a clear case of him throwing mud at the wall and expecting something to stick. But it didn't. Well, let's get a little more specific. We understand the intensity of your feelings, counsel, but be more specific in terms of this record. Okay. With respect to what issues, Your Honor, basically I can go through the four things on the record. The first thing is Ms. Gherman presented detailed, credible, and cogent reasons for the fact that she should be granted asylum. And that is in the record, the fact that she was Pentecostal, the fact that she had been attacked while evangelizing, which is very significant, that she had been raped by policemen who used slurs regarding her Pentecostalism. And in response to that, the I.J. simply misstated the record. He was not able to rebut that. And indeed, the record is really surprising because he's bringing forth matters such as the fact that she was personally groomed, well-groomed in the United States, as somehow being disproof that she was Pentecostal, without any evidence on the record suggesting that or supporting that. As far as her being persecuted on protected ground, it has been established by State Department reports, and it cannot be challenged that, in fact, Pentecostalism is basically under siege. People who have evangelized in Romania, not only with Pentecostalism, but also with evangelical religions, and that is in the State Department's report, are persecuted. Okay. Now, the government did not attempt to rebut the fact that slurs occurred during the rape. Instead, the judge opined that because she was, I suppose the word is a cadius, a former exotic dancer, that the rape, even though the slurs were there and she was arrested evangelizing, was simply a result of sex. That is, essentially, she asked for it because of her prior life. Another ground that he cited, going on to the third, is the well-founded fear of persecution. Now, in order to deal with the State Department's clear statement that Pentecostals are persecuted, and in particular evangelists, the IJ wiped from the record any statement of evangelizing and ignored the activity, despite the fact the State Department points out that it is not simply religious minorities, but in particular those who evangelize. Okay. Instead, he basically assumed that there might be changed conditions on the basis, apparently, of a statement from one person in the evangelical denomination in the United States whom has not even identified and is not in Romania. Finally, the government had to rebut the presumption that the reports of countrywide persecution would allow Ms. Gehrman to go anywhere in the country and simply settle. The judge seized upon the fact that after she had renounced her faith during her period of sin, and that she lived in Bucharest, and she was not bothered at that point in time, well, she wasn't evangelizing, and in fact, it's completely irrelevant. The IJ, on his own, without anything in the record, divined that as a result of the fact she lived in Bucharest when she was not evangelizing the Pentecostal faith, that she could not only move to Bucharest back, despite the fact that she has a record with the police and has been persecuted on these grounds, but anywhere else in Romania. Now, the BIA had an opportunity to fix this, but instead of fixing it, they compounded and deepened the errors. They made no attempt to support the IJ's findings. They simply said, we accept them. But what is significant about the BIA is they compounded the error by supporting the IJ's opinion on explicitly prohibited grounds. It's prohibited practices in which they fantasized evidence without any validation in the record and performed a cross-examination essentially in absentia. They scoured the record and posed unanswered questions, questions that did not come up before the IJ, conducted their own cross-examination, and invented false discrepancies. I can go into detail on each of these points if you wish, but the bottom line is that to allow this case to stand will invite this continued behavior and the Ninth Circuit and other circuits will be flooded with cases where clearly the results are against the law, there is no record, and the government cannot answer to any of these charges. You may reserve your remaining time if you wish, counsel. Thank you very much. We'll hear from the government. Thank you. May I please the Court? Would you please reintroduce yourself for the record, please? My name is Kristen Edison and I represent the Attorney General. And also speak a little louder if you don't mind. Thank you, Your Honor. I apologize. Okay. Here again, it is Ms. Gurman's burden to demonstrate that the record compels reversal of the immigration judge and the Board's decision that she did not credibly establish through her testimony and evidence her eligibility for asylum. Here the immigration judge, as adopted and affirmed by the Board, made two dispositive findings. First, that she did not credibly establish her claim through testimony and evidence. And second, even assuming credibility, that she did not meet her burden. Well, that last one bothers me because, well, let me ask you. The rape. Isn't it quite probable that the rape involved her religious status? Weren't the comments that were made at that point before and after related to the fact that she's a Pentecostal prostitute? Wasn't that the comment? A Pentecostal prostitute? That seems to me to invoke the notion that she was raped because of her religion. At least that's her argument, and isn't that a fair interpretation of that evidence? Well, Your Honor, again, it's Ms. Gurman's burden to demonstrate that the record compels the conclusion that that is the case. And the immigration judge found that Ms. Gurman did not establish that she was mistreated on account of her Pentecostal religion. The immigration judge noted that it's clear from the record that Pentecostals are mocked and discriminated against. Well, I think the question might be slightly different. Counsel, if you don't mind the interruption. That is, if we assume credibility here, if we assume that she was raped and religious slurs were made during the course of the interrogation and the rape, isn't that enough under our case law to establish past persecution? Yes, assuming credible testimony. So if she's credible, then she's established past persecution. And if she's established past persecution, we would have to remand for a determination of whether or not, or potentially, to apply the presumption, right? Yes, Your Honor. I'm sure you didn't, the government didn't put any evidence on that would rebut a past persecution or change country conditions, right? Well, Your Honor, it's still the government's position that Ms. Gurman didn't demonstrate past persecution in order to give rise to the presumption of future persecution. Well, what's the government's interpretation of that whole rape episode? Your Honor, it's the government's position that that evidence doesn't compel the conclusion that it was on account of her religion. I thought you agreed with me that if credible, that episode enough was enough to establish past persecution on account of religion. Did I misunderstand your answer? No, Your Honor. Okay. So this case comes down to credibility then? Yes, Your Honor. Okay. Why does, why does, go ahead. The Court will have to find that the record compels reversal on both accounts. First, because they were two dispositive findings. First, the Court will have to find that Ms. Gurman was credible in her claim of persecution on account of her religion. And then the Court will also have to find that she demonstrated eligibility for asylum. Yes, but if she's, again, not to plow old ground, but if religious slurs were made during the course of a rape and assault while in custody, under our case law, wouldn't that compel a conclusion of past persecution under Shofara and the other cases? Well, but again, Your Honor, the board and the immigration judge didn't find. First of all, the immigration judge pointed out that Ms. Gurman's claim in that respect, that aspect of her testimony, was very much lacking in detail. And in addition, she, there were implausible aspects about that part of her testimony, particularly why the police would even have any interest after that episode in pursuing Ms. Gurman. So before we move on, Your Honor, we just must emphasize that the board and the immigration judge didn't make that finding, that Ms. Gurman was credible in that respect. Your Honor, I'm happy to give Petitioner his rebuttal time, but I first wanted to point out that there's an error in Petitioner's reply brief with respect to REAL ID Act Section 101E, and that that provision, that's I believe at page 6 of the reply brief, that provision is applicable in Petitioner's case, despite arguments to the contrary. Why? I'm sorry? I mean, we've held in the circuit that the companion section on the board's testimony, or the board's, on the REAL ID Act, only applies to petitions that were filed before the enactment of the REAL ID Act. But that Section 101E, with regard to availability of corroborating evidence, applies to? It does. Well, we've held that the companion statute, why would we construe this section differently from the companion section? There's no difference in the sections in terms of the logical theory about whether the REAL ID Act applies or not, is there? I'm not sure I understand the question. Well, we've already held that the REAL ID Act doesn't apply in a companion section to cases that were filed before the enactment date of the REAL ID Act. Why would we construe it any differently with respect to this section? Your Honor, it's just this one provision, and it's been held to apply to petitions made prior to or after. I'm not in this circuit. Perhaps then, Your Honor. Is this in your brief? Yes. Okay. Now, wait a minute. How can it be in your brief if you're talking about the reply brief? Your Honor, the reply brief contradicts the not my reply brief, Petitioner's reply brief. Yeah. So the Petitioner's reply brief is responding to an argument the government makes in this brief. Okay. I simply wanted to point that out. All right. Fine. Okay. Very good. I'll simply ask the Court to affirm the agency's decision to deny the Petitioner's reply brief. Thank you, counsel. Mr. Curtis, you have some reserved time. I just like to say that the case put forth by the government today is emblematic of what has happened in this case. The burden is on the appellant if there is a finding of specific cogent reasons to deny asylum or withholding of asylum. In this case, there were none. The only grounds cited were general, incorrect based on misstatements of the record, or in the BIA's case, extrapolated and made out of whole cloth in the absence of any cross-examination. Two, the government did not address the issue of the nexus between the slurs and the rapes. This is unrebutted. The government's sole argument, and they've repeated it here today, is implicitly that this was for sex. Well, I would submit that all rape has something to do with sex. That's a given. The question is what are the circumstances of the rape, and the government has not attempted to rebut the fact that she was arrested while evangelizing, called a Pentecostal whore, and raped as a result of her detainment on that. The immigration judge seemed to doubt that she was a Pentecostal based on a whole series of examinations. Does that matter in terms of past persecution? In other words, if the police reasonably believe she was Pentecostal, does it matter what her personal beliefs are? No, Your Honor, it does not. In other words, one can be a Pentecostal without knowing chapter and verse. Once at Berkeley, I remember running into an evangelist on Sproul Plaza who was preaching what he thought was the Good Samaritan story, but in fact it was the Prodigal Son. Everyone laughed, but nevertheless he was evangelizing. In this case, the adverse credibility finding is based on sheer incompetence. The question was never asked, what is Pentecostal? The question asked was, what was Pentecost? And the appellant gave exactly the correct answer under the Pentecostal, I would not say church. I guess I was asking a slightly different question, and perhaps more in line with imputed beliefs. I mean, if the persecutors believe she was Pentecostal, does it matter whether she was Pentecostal or not? No. In terms of past persecution analysis. Exactly. In terms of past persecution, the record is clear that Pentecostals, and in particular evangelists, are persecuted. No matter what she thought she was doing, that would stand. Her sanity is not at issue in this hearing. Anything further, counsel? No. I will close. Thank you very much, Your Honor. Thank you very much, counsel. The case just argued will be submitted for decision.
judges: Goodwin, O'scannlain, Thomas